**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Meredith Hawkins, et al., | No. CV-24-00788-PHX-SHD |
| Plaintiffs, | **ORDER** |
| v. | |
| Shonda Zenner, et al., | |
| Defendants. | |

Pending before the court is Defendants Shonda and Thomas Zenner's Amended Motion to Dismiss Plaintiffs' Complaint for lack of subject matter and personal jurisdiction, improper venue, and failure to state a claim due to inadequate pleading under Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. 17.) For the following reasons, the motion will be **denied in part** and **granted in part**.[1]

## I.    BACKGROUND

Plaintiff Meredith Hawkins owns six limited liability companies (the "Companies" and, collectively with Hawkins, "Plaintiffs"), also plaintiffs in this case, which own and manage residential real estate in Arizona, Utah, and North Carolina. (Doc. 1 ¶¶ 1–11.) Hawkins currently resides in Utah, but she previously lived in Chandler, Arizona. (*Id.* ¶ 1.) Five of the Companies—Appaloosa Trail, LLC; Sea Strand, LLC; Sea Gull, LLC; Calle Property, LLC; and Ocean Dr. Property, LLC—are registered as domestic LLCs in

---

[1]    The parties did not request oral argument, so the motion is decided without a hearing. *See* LRCiv 7.2(f).

Arizona, and one company—Mere, LLC—is registered as a domestic LLC in Utah.[2]  (*Id.* ¶¶ 1–11.)  All six Companies maintain their principal place of business in Maricopa County, Arizona.  (*Id.*)

Plaintiffs assert claims against Shonda Zenner, Thomas Zenner, and Bravda Velo, LLC ("Bravda" and, collectively with the Zenners, "Defendants").  Shonda and Thomas Zenner are a married couple currently residing in California.  (*Id.* ¶ 13.)  Before moving to California, the Zenners lived in Chandler, Arizona, where they met and began working with Hawkins.  (*Id.* ¶¶ 13, 30.)  Bravda is an interior design business, which Shonda[3] manages, and of which Thomas is the sole member.  (*Id.* ¶¶ 17–18.)  Bravda is a registered Arizona LLC, and its principal place of business is in Maricopa County.  (*Id.* ¶¶ 19–20.)

Hawkins and the Zenners met in 2005.  At the time, they were neighbors in Chandler, and Hawkins and Shonda "developed a close friendship."  (*Id.* ¶¶ 30, 34.)  In 2015, Hawkins hired Shonda as an interior designer for several of her residential real estate projects.  (*Id.* ¶ 34.)  Over the next seven years, Hawkins hired Shonda for eight additional projects.  (*Id.* ¶ 35.)

In 2023, Hawkins' relationship with the Zenners soured when she discovered that Shonda, through Bravda, "purchased product with Plaintiffs' credit cards that was never delivered to Plaintiffs."  (*Id.* ¶¶ 64, 69.)  Plaintiffs allege that over the course of their business relationship, the Zenners defrauded Plaintiffs by (a) "secretly padd[ing] the cost of the products Shonda purchased for the projects . . . and divert[ing] the surplus" to themselves personally and Bravda; (b) "secur[ing] kickbacks from vendors" Shonda arranged to work on Hawkins' projects; (c) submitting fraudulent invoices for reimbursement; and (d) making unauthorized purchases using Plaintiffs' credit cards.  (*Id.*)

Specifically, Plaintiffs allege the Zenners engaged in two "fraudulent schemes."  Under "Fraudulent Scheme 1," Shonda told Hawkins that Bravda "purchased most Project

---

[2]    Calle Property, Ocean Dr Property, and Mere are no longer active companies as they were terminated in 2023 and March and June of 2022, respectively.  For ease of reference, the present tense is used when referring to all the Companies.

[3]    The Zenners are referred to individually by their first names to avoid confusion, not out of any disrespect.

furniture and decorative items from third-party vendor Found Home & Design . . . with [Bravda's] own funds," but Shonda actually "utilized Plaintiffs' credit cards to complete all purchases from Found." (*Id.* ¶¶ 46–48.)  Then, "after purchasing the Project Furniture with Plaintiffs' credit cards, Bravda . . . issued invoices to Plaintiffs demanding reimbursement for the Project Furniture." (*Id.* ¶ 50.)  These invoices, Plaintiffs allege, "marked up the Project Furniture purchases and seamstress expenses by two to three times the actual costs Plaintiffs had already paid." (*Id.* ¶ 51.)  Plaintiffs provide two examples of this fraudulent behavior: (i) "Bravda charged Appaloosa Trail $48,000 for outdoor furniture when the actual cost . . . was $17,416.71 and had already been paid . . . by Appaloosa Trail," and (ii) Bravda "charged Plaintiffs $23,262 for Project seamstress expenses when the actual seamstress fees . . . were $7,089.31." (*Id.* ¶¶ 52–53.)  Trusting that the invoices were valid, "Plaintiffs paid the Fraudulent Invoices and other payment demands made by Shonda," who then "distributed the funds . . . to herself and the entities under her and [Thomas'] control, including Bravda." (*Id.* ¶ 56.)

Under "Fraudulent Scheme 2," Plaintiffs allege that (i) Shonda "utilized Plaintiffs' credit cards to purchase furniture that was never utilized for the Projects"; (ii) "from 2018 to 2022," Shonda charged "approximately $271,000 for furniture and other goods from Found Home & Design"; and (iii) "upon information and belief, Shonda kept and/or resold no less than $96,000 of Found furniture and other goods purchased for her own personal benefit, and/or the benefit of entities under her and/or [Thomas'] ownership or control including Bravda." (*Id.* ¶¶ 57–58.)  According to the Complaint, "Shonda went to great lengths to conceal her activity from Plaintiffs," including "but not limited to . . . falsely representing to [Hawkins] that only interior designers can contact retailers and wholesalers directly regarding certain transactions" and "strategically breaking up her purchases and spreading them across several Plaintiffs' credit cards to avoid detection." (*Id.* ¶ 62.)

In April 2024, Plaintiffs filed this action, asserting claims for fraud/constructive fraud (Count 1), fraudulent concealment (Count 2), civil conspiracy to commit fraud (Count 3), and misappropriation of funds (Count 4).  (Doc. 1.)  In June 2024, Defendants

moved to dismiss the complaint for lack of subject matter (without citing Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6) based on their argument that Plaintiffs failed to meet the pleading requirements of Rule 9(b).  (Doc. 17.)  Plaintiffs responded, (Doc. 20), and Defendants did not reply.

## II.    DISCUSSION

### A.    Subject Matter Jurisdiction

Federal district courts have subject matter jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000.[4]  28 U.S.C. § 1332(a)(1).  Defendants argue that Plaintiffs have not alleged that at least $75,000 dollars is at issue in this case.  (Doc. 17 at 2.)  They are wrong.

The Complaint sufficiently pleads an amount in controversy exceeding $75,000. Plaintiffs allege that Shonda submitted fraudulent reimbursement invoices for purchases Shonda made on the Plaintiffs' credit cards.  (Doc. 1 ¶¶ 50–56.)  By way of example, she points to two instances in which Shonda was "reimbursed" for $48,000 and $23,262, respectively.  (*See id.*  ¶¶ 25, 53.)  Plaintiffs further allege that Shonda made "at least $96,000 in fraudulent purchases" using the Plaintiffs' credit cards.  (*Id.* ¶ 87.)  And Plaintiffs seek at least $276,399.89 in damages.  (*Id.* ¶ 88.)  These allegations are sufficient to establish subject matter jurisdiction at the pleading stage.  *See Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka,* 599 F.3d 1102, 1106 (9th Cir. 2010) ("To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." (quotation marks and citation omitted)).  Accordingly, Defendants are not entitled to dismissal for lack of subject matter jurisdiction.

### B.    Personal Jurisdiction

Defendants next challenge personal jurisdiction over them, arguing that because the Zenners now reside in California, they are no longer subject to the jurisdiction of federal

---

[4]    Defendants do not challenge the diversity of the parties, which was confirmed on May 15, 2025.  (Docs. 14, 15.)

1  courts in Arizona.[5]  (Doc. 17 at 4–5.)  In response, Plaintiffs argue that despite the Zenners'
2  move to California, they have significant contacts with the state of Arizona, justifying the
3  exercise of personal jurisdiction in this case.  (Doc. 20 at 5–7.)

### 1.    Legal Standard

5      "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the
6  plaintiff bears the burden of establishing that jurisdiction is proper."  *Ranza v. Nike, Inc.*,
7  793 F.3d 1059, 1068 (9th Cir. 2015) (quotation marks omitted).  "[M]ere 'bare bones'
8  assertions of minimum contacts with the forum or legal conclusions unsupported by
9  specific factual allegations will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG*
10 *LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  However, "the plaintiff need only make a prima
11 facie showing of jurisdictional facts to withstand the motion to dismiss."  *Ranza*, 793 F.3d
12 at 1068 (citation omitted).

13     In determining whether personal jurisdiction exists, a court may consider affidavits
14 or written materials.  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285
15 (9th Cir. 1977).  If written materials are considered, a plaintiff is not required to prove
16 jurisdictional facts by a preponderance of the evidence at this stage, because then a
17 "defendant [could] obtain a dismissal simply by controverting the facts established by a
18 plaintiff through his own affidavits and supporting materials."  *See id.*  Indeed, "if both
19 sides submit affidavits, then conflicts between the parties over statements contained in
20 affidavits must be resolved in the plaintiff's favor."  *LNS Enters. LLC v. Cont'l Motors,*
21 *Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (citation modified).  Additionally, the documents
22 submitted by the plaintiff in support of jurisdiction "are construed in the light most
23 favorable to the plaintiff."  *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th
24 Cir. 1990).  Ultimately, "if a plaintiff's proof is limited to written materials, it is necessary
25 only for these materials to demonstrate facts which support a finding of jurisdiction in order

---

[5]      Defendants only challenge personal jurisdiction as to the Zenners; they do not
challenge personal jurisdiction over Bravda.  (*See* Doc. 17 at 4–6.)

to avoid a motion to dismiss." *Data Disc*, 557 F.2d at 1285.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, whether this Court has personal jurisdiction over the Zenners "is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Id.*

"Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted). Minimum contacts exist "if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (quotation marks omitted). "In giving content to that formulation, [courts have] long focused on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation marks omitted). Thus, specific jurisdiction over a nonresident defendant is proper if three requirements are met:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation modified). The defendant's contacts with the forum state "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1958)). "They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploiting the

1    market' in the forum State or entering a contractual relationship centered there."  *Id.*

2    (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (citation modified).

3            "The plaintiff bears the burden of satisfying the first two prongs of the test."

4    *Morrill*, 873 F.3d at 1142 (quotation marks omitted).  "If the plaintiff succeeds in satisfying

5    both of the first two prongs, the burden then shifts to the defendant to present a compelling

6    case that the exercise of jurisdiction would not be reasonable."  *Id.* (quotation marks

7    omitted).

8                            **2.    Discussion**

9            Defendants argue that the Zenners are not subject to personal jurisdiction in Arizona

10   because they are now residents of California, and Plaintiffs have not alleged that they have

11   any remaining contacts with Arizona.  (Doc. 17 at 4–5.)  Plaintiffs do not dispute that the

12   Court lacks general jurisdiction, but maintain that the Zenners have sufficient contacts with

13   Arizona to establish specific jurisdiction.  (Doc. 20 at 5–7.)  The Complaint, and the

14   declaration submitted in support of Plaintiffs' Response,[6] confirm Plaintiffs' position.

15           First, Plaintiffs assert that at least some of the alleged fraud occurred between 2014

16   and 2016, when the Zenners were residents of Arizona, (Doc. 20-1 ¶¶ 8–9, 13, 19), and

17   that Shonda offered to perform interior design services for Hawkins when she was an

18   Arizona resident, (*see id.*; Doc. 1 ¶ 33).  Plaintiffs further assert that the Zenners continue

19   to advertise their professional services, including interior design, in Arizona, specifically

20   targeting residents in Scottsdale and Paradise Valley.  (Doc. 20-1 ¶¶ 31–34.)  Hawkins

21   hired Shonda to perform interior design services for primarily Arizona properties, and

22   Shonda—through Bravda, an Arizona LLC—purchased most of the furniture for those

23   properties through Arizona vendors, namely Found Home & Design in Chandler, Arizona.

24   (*Id.* ¶¶ 13–17, 25; Doc. 1 ¶ 46.)  In short, the Zenners sought and continue to seek interior

25   design business in Arizona; solicited Hawkins for work when they lived in Arizona; entered

26   multiple employment arrangements with Hawkins—an Arizona resident—to work on

27   Arizona properties; sourced furniture from Arizona companies; and operated much, if not

28   ─────────────
[6]        The Zenners did not file a reply. The facts established in Hawkins' declaration,
(Doc. 20-1), are therefore unrebutted.

1    all, of their business with Plaintiffs through Bravda, an Arizona LLC with its principal

2    place of business in Maricopa County.

3          These are not "random, isolated, or fortuitous" contacts over which the Zenners had

4    no control. *Ford Motor*, 592 U.S. at 359.  Rather, they demonstrate that the Zenners acted

5    purposefully in conducting business in Arizona and are more than sufficient to establish

6    the "minimum contacts" necessary for specific jurisdiction.  *See eUnify Inc. v. Anthony M.*

7    *Serra CPA, Inc.*, 642 F. Supp. 3d 971, 977–78 (D. Ariz. 2022) (finding specific jurisdiction

8    over non-resident defendant who filed state tax returns for Arizona residents because the

9    defendant "expressly aimed its intentional acts at Arizona . . . [and] should have known

10   that the harm from its alleged negligence would be suffered primarily in Arizona");

11   *Stonecreek Bldg. Co., Inc. v. Plastech Holding Corp.*, 2010 WL 1253169, *4 (D. Ariz.

12   2010) ("[Defendants' extensive contact with an Arizona business who was working to

13   renovate and Arizona home owned by their privately held corporation . . . should have

14   indeed alerted Defendants to the possibility that they might have to one day defend

15   themselves against a lawsuit concerning [the] renovations in an Arizona court.").[7]

16         The claims Plaintiffs assert against the Zenners also "arise[] out of or relate[] to [the

17   Zenners'] forum related activity."  *See Axiom Foods*, 874 F.3d at 1068.  Plaintiffs allege

18   that the Zenners conspired to, and did, commit fraud while performing interior design

19   services for her, an Arizona resident, on Arizona properties.  Further, the alleged fraud

20   arose from unauthorized purchases of, and fraudulent invoices for, Arizona furniture.

21   Plaintiffs have thus made a "prima facie showing" of personal jurisdiction.  Defendants'

22   only argument—that they no longer reside in Arizona—does nothing to rebut Plaintiffs'

23   allegations that they previously maintained extensive contacts with Arizona and does little

24   to rebut Plaintiffs' allegations that they still do.  Nor have the Zenners offered any argument

25   "that the exercise of jurisdiction would not be reasonable" under the third prong of the

---

[7]    Courts "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct."  *Morrill*, 873 F.3d at 1142.  The parties do not discuss this distinction.  Because the Zenners' contacts with Arizona satisfy either test, it is unnecessary to do so here. *Compare eUnify*, 642 F. Supp. Ed at 977–78 (applying purposeful direction test) *with Stonecreek Bldg. Co.*, 2010 WL 1253169 (applying purposeful availment test).

specific jurisdiction test.  (*See generally* Doc. 17.)  *Morrill*, 873 F.3d at 1142.  Defendants' motion to dismiss for lack of personal jurisdiction will therefore be denied.

### C.    Venue

Venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  Plaintiffs allege that the Zenners' fraudulent conduct began when they were residents of Arizona, that many of the projects that the Zenners and Brava worked on were in Arizona, and that the fraud arose out of these Arizona projects and out of purchases made from Arizona furniture stores.  The Zenners only argue that they reside in California, and conclusorily state that the other grounds for venue "are not present [in] this case," but make no argument why § 1391(b)(2) does not apply here.  (Doc. 17 at 6–7.)

Because "a substantial part of the events or omissions giving rise to" Hawkin's claims of fraud and misappropriation occurred in Arizona, venue in this District is proper.  28 U.S.C. § 1391(b)(2); *see Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001) (holding that venue was proper where "at least one of the harms suffered by Plaintiffs . . . was felt in [the district]" (quotation marks omitted)).

### D.    Federal Rule of Civil Procedure 9(b)

Finally, Defendants argue that Plaintiffs have failed to meet the pleading standards outlined in Federal Rule of Civil Procedure 9(b), and thus have failed to state a claim under Rule 12(b)(6).  (Doc. 17 at 7–10.)  That rule requires that a plaintiff asserting a fraud claim "state with particularity the circumstances constituting fraud" in the complaint.  To satisfy these "heightened pleading requirements," plaintiffs must allege "the who, what, when, where, and how of the misconduct charged."  *Bodenburg v. Apple Inc.*, 146 F.4th 761, 771 (9th Cir. 2025) (citation modified).  "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the [fraudulent] transaction."  *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (as amended) (citation omitted).  They "must set forth what is false or misleading about [Defendants'] statement[s], and why [they are] false."  *Id.* (citation

1   omitted).

2          Defendants fault Plaintiffs' Complaint for failure to identify "specific invoices or

3   purchases or dates." (Doc. 17 at 9.) As an initial matter, this is incorrect; the Complaint

4   does mention specific invoices. (*See* Doc. 1 at 6–7 (providing two examples of fraudulent

5   invoices)). Regardless, "[i]t is not fatal to the complaint that it does not describe in detail

6   a single specific transaction . . . in which [the defendant] transgressed . . . , by, [for

7   example,] customer, amount, and precise method." *Cooper*, 137 F.3d at 627 (declining to

8   require allegations of "specific shipments to specific customers at specific times with a

9   specific dollar amount of improperly recognized revenue"). So long as the Complaint

10  "identifies the circumstances of the alleged fraud so that defendants can prepare an

11  adequate answer," it will satisfy Rule 9(b). *Id.*

12         Nevertheless, although Plaintiffs' Complaint provides a broad sense of the fraud

13  alleged, it lacks the specificity required by Rule 9(b). For example, with respect to

14  "Fraudulent Scheme 1," the complaint alleges that sometime between 2015 and 2022—a

15  seven-year period—Shonda and Bravda submitted fraudulent invoices requesting

16  reimbursement for furniture and services for which Plaintiffs had already paid. (Doc. 1 ¶¶

17  35, 46–56.) The Complaint provides two specific examples of this conduct: that Bravda

18  charged Appaloosa Trail $48,000 for furniture that cost about $17,000, and charged

19  "Plaintiffs" over $23,000 for seamstress expenses that cost roughly $7,000, after paying

20  for the same furniture and services with the Plaintiffs' credit cards. (Doc. 1 ¶¶ 52–53.)

21  Similarly, under "Fraudulent Scheme 2," the Complaint alleges that Shonda and Bravda

22  purchased unauthorized furniture with the Plaintiffs' credit cards but states only that this

23  occurred sometime between 2018 and 2022—a four-year period.

24         The Complaint thus alleges the who, what, and how of the alleged fraud, but fails

25  to specify the when and where. *See United States ex rel. Lee v. SmithKline Beecham*, 245

26  F.3d 1048, 1051 (9th Cir. 2001) (complaint failed to satisfy Rule 9(b) where the plaintiff

27  "did not . . . provide any dates, times, or places the [fraudulent] tests were conducted").

28  While a Complaint need not provide "specific times" of particular transactions, it must give

1    the defendant some sense of when and where the fraud occurred.  *Cooper*, 137 F.3d at 627;

2    *see also id.* (complaint satisfied Rule 9(b) where it alleged that securities fraud took place

3    in the "last two quarters of 1993 and first quarter of 1994")) *and Davies v. Broadcom Corp.*,

4    130 F. Supp. 3d 1343, 1351 (C.D. Cal. 2015) (dismissing state-law fraud claim under Rule

5    9(b) because the plaintiff "only vaguely identifie[d] the time ('in or about 2012' and 'in or

6    about March 2014') of the alleged misrepresentations and fail[ed] completely to identify

7    the places").

8        Plaintiffs' Complaint identifies seven- and four-year periods in which Fraudulent

9    Schemes 1 and 2 took place, encompassing, in the first instance, the entire duration of the

10   parties' professional relationship.  It is not clear whether every interaction the parties had

11   during this period was fraudulent, or whether the alleged fraud was limited to a few isolated

12   events.  Rule 9(b) requires more.  *See Bodenburg*, 146 F.4th at 771 n.5 (noting that

13   dismissal with leave to amend is appropriate when the complaint is "missing temporal

14   allegations" required by Rule 9(b)).

15       In addition to "Fraudulent Scheme 1" and "Fraudulent Scheme 2," the Complaint

16   contains brief references to additional fraudulent conduct including inflation of expenses

17   incurred on work-related travel, and the collection of "kick-backs" from third-party

18   vendors.  (Doc. 1 ¶¶ 37–45.)  To the extent Plaintiffs seek relief for such misconduct, they

19   have inadequately pled their claims because they fail to specify "the who, what, when,

20   where, and how of the misconduct charged."  *Bodenburg*, 146 F.4th at 771 (citation

21   modified).

22       Defendants raise several other conclusory and one- or two-sentence arguments for

23   dismissal under Rule 9(b), which are not sufficiently presented.  (*See e.g.*, Doc. 17 at 8–9.)

24   For example, Defendants state that "[t]here are no allegations of scienter."  (Doc. 17 at 9.)

25   This is belied by the Complaint, which contains numerous references to Defendants' intent

26   and knowledge.  (*See* Doc. 1 ¶¶ 79–80, 91–92, 103–106.)  And Defendants cite no authority

27   for the requirements for pleading scienter under Rule 9(b) and offer no analysis for why

28   Plaintiffs' Complaint fails to meet those requirements.  (*See e.g.*, Doc. 17 at 8–9.)  *See* Fed.

R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

It is not the role of the Court to make the parties' arguments for them." *McClain v. Wells Fargo Bank, N.A.*, 2012 WL 851402, *3 (N.D. Cal. 2012) (rejecting defendants' "undeveloped arguments" because they "neither cited any legal authority nor provided the requisite legal analysis"); *Glob. Horizons, Inc. v. United States Dep't of Lab.*, 510 F.3d 1054, 1058 (9th Cir. 2007) (holding that "the district court did not abuse its discretion when it did not address" "conclusory one-sentence argument[s]"); *Kim v. Sheraton Operating Corp.*, 2020 WL 3124306, *5 n.8 (C.D. Cal. 2020) (declining to address arguments not adequately argued in defendant's briefing).

For the reasons stated above, the Complaint fails to meet the heightened standard of Rule 9(b) and therefore will be dismissed with leave to amend. *See SmithKline Beecham*, 245 F.3d at 1052 ("[L]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks omitted)).

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss for lack of subject matter jurisdiction, personal jurisdiction, and venue, (Doc. 17) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) due to the failure to plead fraud with particularity under Rule 9(b) (Doc. 17) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiffs have **14** days to file an amended complaint. Consistent with LRCiv 15.1, Plaintiffs shall file, concurrently with any amended complaint, a notice of filing the amended pleading that attaches a copy of the amended pleading indicating in what respect it differs from the original complaint.

Dated this 26th day of September, 2025.

Honorable Sharad H. Desai
United States District Judge